Wayne Hugh **EASLEY TRUST, W. H. Easley, Trustee,** Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

Roger Kent **EASLEY TRUST, W. H. Easley, Trustee,** Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 14199.

United States Court of Appeals
Ninth Circuit.

Dec. 22, 1955.

---

Clyde C. Sherwood, John V. Lewis, San Francisco, Cal., for appellants.

H. Brian Holland, Asst. Atty. Gen., Louise Foster, Ellis N. Slack, Howard P. Locke, Dudley J. Godfrey, Jr., Sp. Assts. to Atty. Gen., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and CLARK, District Judge.

CLARK, District Judge.

This matter is here on petition for review of the decision of the Tax Court. All of the facts were stipulated and as taken from the stipulation were summarized by the Tax Court as follows:

The petitioners herein, the Wayne Hugh Easley Trust (hereinafter sometimes referred to as Trust No. 1) and the Roger Kent Easley Trust (hereinafter sometimes referred to as Trust No. 2) were created on October 1, 1940, by separate written Declarations of Trust of the same date executed by W. H. Easley and Margaret A. Easley as settlors. Since that date and throughout the period here involved, each petitioner has been a duly existing trust under the provisions of the respective Declarations of Trust and under and by virtue of the laws of the State of California. Since the creation of the trust and throughout the period involved, W. H. Easley has been the duly qualified and acting trustee of each petitioner-trust.

During the period here under review, each petitioner-trust kept its books of account and filed its income tax returns on the calendar year basis and on the cash method of accounting. Such returns were filed with the collector of internal revenue for the first collection district of California.

At all times material herein, the settlors of the trusts in question were husband and wife who, prior to October 1, 1940, conducted a business of bottling and selling a beverage known as "Seven-Up" under a franchise from the Seven-Up Company of St. Louis, Missouri. Such business was conducted at San Francisco, California, and was known as the Seven-Up Bottling Company of San Francisco (hereinafter called the Bottling Company). Under the laws of the State of California, the business was the community property of the settlors.

Under and by virtue of the Declarations of Trust of October 1, 1940, Easley and his wife, as settlors, transferred to W. H. Easley, as trustee of the trusts, respectively, an undivided one-fourth interest each in their business, the Bottling Company. They duly filed gift tax returns reporting as gifts the transfers thus effected and subsequently paid deficiencies in gift tax determined by respondent. For each of the years 1940 through 1945, a "Partnership Return of Income" was filed in the name of the Bottling Company, in which returns the settlors and the petitioners were named

as partners and one-quarter of the net income of the Bottling Company was reported as the respective share of each of these partners. Each petitioner-trust duly reported its share of the net income in its income tax returns.

By decisions entered in Dockets Nos. 6287 and 6288 and promulgated January 27, 1947, reported as W. H. Easley, 8 T. C. 153, this Court determined that all of the income of the Bottling Company was taxable to the settlors of petitioner-trusts, Easley and his wife, as their community income. As a result thereof, deficiencies in tax and interest were assessed against the settlors and, correspondingly, overassessments of tax and credits for interest thereon were determined with respect to each of the petitioner-trusts for the taxable years 1940 through 1945. Pursuant to a "consent to credit" executed and filed by W. H. Easley, Trustee, in behalf of each trust, and covering each of the aforementioned years, the collector of internal revenue applied the overassessments of tax, so determined with respect to each petitioner-trust, in reduction of the deficiencies assessed against the settlors, or either of them, for such years and issued notices and demands for the remaining balance of the deficiencies, plus interest. The collector, during the year 1948, mailed to each petitioner-trust checks covering the interest allowed on the overassessments for the taxable years 1940 through 1945, Easley, as trustee for each trust, endorsed such interest checks and he and his wife, as settlors, or either of them, used the funds in part payment of the deficiencies in interest assessed against them or either of them, except as to the deficiencies of Margaret A. Easley for the years 1940 and 1941.

The aggregate amount of the checks mailed to each petitioner-trust during 1948 covering interest allowed on the overassessments for the years designated was $27,842.05 and $27,517.65 for Trusts Nos. 1 and 2, respectively, as per the following schedule:

| Year | Trust No. 1 Interest Allowed | Trust No. 2 Interest Allowed |
|------|------------------------------|------------------------------|
| 1940 | $ 279.81 | $ 279.81 |
| 1941 | 5,373.83 | 5,063.12 |
| 1942 | 8,688.33 | 8,690.44 |
| 1943 | 5,669.42 | 5,654.85 |
| 1944 | 5,398.18 | 5,404.29 |
| 1945 | 2,432.48 | 2,425.14 |

In computing its gross income for the taxable year 1948, each petitioner-trust excluded the total amounts of interest checks received on the overassessments. In the determination of each petitioner's income tax liability for the year 1948, the respondent added the amount of such interest checks to each trust's net income disclosed by its return. The addition of such interest checks is the sole cause of the income tax deficiencies here in controversy.

The settlors, Easley and his wife, on their 1948 income tax returns, deducted, as interest paid on the deficiencies resulting from the taxation to them of the net income reported by petitioner-trusts, the interest deficiencies assessed against them reduced by the amount of the interest checks received by petitioner-trusts. In determining overassessments against the settlors for the year 1948, respondent increased their respective deductions for interest by the amount of the interest checks received from petitioner-trusts.

The questions presented are: Were the interest payments received by the taxpayer trusts in 1948 on their tax refund claims for the years 1940 through 1945 includible in their gross incomes under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A § 22(a), and

Assuming the interest payments were includible in the taxpayer trusts' gross

incomes, were they, as a result of their transfer to the settlors, allowable deductions from the taxpayers' gross incomes either under Section 23(a) (1) (A) or (2) of the Code as ordinary expenses or under Section 23(b), 26 U.S.C.A. § 23(a) (1) (A), (2), (b) as interest on indebtedness.

Section 22(a) of the Internal Revenue Code is as follows:

" 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

The statute is clear that interest is to be considered as gross income. No distinction is made as to interest of any source, whether it be earned because of overassessment of taxes or from investments made with the earning of interest specifically in mind. We see no merit in any contention made that interest on the overassessment was not includible.

The Petitioner-Trusts, during the years involved here, were entitled to any profits or benefits that accrued from their ownership, and as such recipients were obliged to show the interest payments received, as a part of their income.

Even though there was an overassessment for the years in question and this resulted in a refund of the amount of the overassessment and interest, this would not alter the fact that the interest was a profit accruing to the trusts and as such is taxable as income to the trusts. Schreiber v. Commissioner, 6 Cir., 160 F.2d 108.

The interest checks received by the taxpayers in 1948 were includible in their gross income under Sec. 22(a). New Oakmont Corp. v. U. S., 86 F.Supp. 897, 114 Ct.Cl. 671.

Exhibit J is a letter of January 21, 1948, from the Commissioner of Internal Revenue to W. H. Easley, Trustee, as follows:

"Attention is invited to a tentative finding of the Bureau that income for the years 1940, 1941, 1942, 1943, originally taxed on your return is apparently taxable to W. H. Easley and Margaret A. Easley, resulting in a proposed overassessment in your favor and a proposed deficiencies against W. H. Easley and Margaret A. Easley.

"If you will authorize the credit of your apparent overpayments to the proposed deficiencies in question, further consideration will be given, with a view to finally determining the tax liability of both parties and your consents to credit would relieve the apparent deficiency taxpayer of the payment of the additional tax to the extent of the amount of the proposed overassessment in your favor. Pending the receipt of such an agreement to credit, however, no overassessment is available for either credit or refund purposes.

"If this adjustment is effected, and a refund found to be due you after the application of the credit, a Treasury Check will be issued in settlement thereof, together with allowable interest.

"In the event this adjustment is satisfactory to you, it is requested that you sign the enclosed consents to credit and return them to this office, for the attention of IT:C1:CC3–DE.

"By direction of the Deputy Commissioner:

"Respectfully,
"P. H. Sherwood,
Head of Division."

Exhibit F is as follows:

"Consent to Credit. W. H. Easley, Trustee.

"I, Wayne Hugh Easley, Trust of San Francisco, State of California, do hereby authorize the Commissioner of Internal Revenue to credit an overpayment of my income taxes in the amount of $772.96 and $16,706.04 for the years 1940 and 1941 to additional taxes in the amount of $43,022.97 due from W. H. Easley of San Francisco, State of California, for the years 1940 and 1941. W. H. Easley, Trustee."

Like letters were written by the Commissioner and like consents given for the other years involved here.

The transfer was made, or credit given for the amount of the overassessments.

The Petitioners make this further contention:

"That the interest payments did not constitute gross income to them for the reason that they were under an obligation to pay over such interest to the settlors to whom in equity it rightfully belonged and that in the performance of such obligation they acted merely as conduits."

The Tax Court had before it the stipulation of facts hereinbefore referred to, and also the "Declaration of Trust" by which each of the trusts involved here was created. A study of the Declarations and the Stipulation of Facts presented to the Tax Court fails to reveal anything from which any inference might be drawn that there was any legal obligation to pass the payments to another. Indeed, quite the contrary appears. The declarations of trust involved here, contained the following:

"Now, Therefore, in order to create such Trust and define the terms and conditions thereof, Wallace Herschel Easley and Margaret Alice Easley, hereinafter called the Settlors, do by these presents Grant, Transfer, Deliver and Set over unto the trustee hereinafter designated all of the following described property, to-wit:

"An undivided one-fourth interest in and to that certain business conducted by the Settlors under the name of Seven-up Bottling Company of San Francisco, * * * That said business consists of the following assets and liabilities, to-wit: * * * To have and to hold all and singular the above granted premises and property and every part thereof unto the said Trustee, his successors and assigns, forever in fee simple; in trust, nevertheless unto and for the use, interest and purposes of this trust. * * *"

The Petitioners also contend that they were under a duty in equity, on the ground of unjust enrichment and under the doctrine of reformation and modification based upon mistake, to make restitution to their settlors of the tax refunds and interest on the refunds as a result of the holding in Easley v. Commissioner, 8 T.C. 153. There is nothing in the record to indicate other than that the taxes paid were paid out of trust money. Therefore, even though these taxes were paid on income which it developed later was taxable to Easley personally, the refund of the tax and the interest thereon were properly made to the trusts. Under the decision of the Tax Court, the Easleys personally, and not in Mr. Easley's capacity as trustee, were responsible for the tax on the income erroneously reported by the trusts. Thus, if the trusts were to pay the interest over to Mr. Easley it would be going to him personally rather than to him as settlor of the trust. It is for this same reason that Mr. Easley does not have the right of exoneration or reimbursement from the trusts. When he paid the taxes called for by the Tax Court decision he paid them as an individual and not as trustee, and therefore the trusts are not responsible to him for the amount so paid.

We do not agree with the contention of petitioners that the interest paid over to the settlors was a necessary expense. No legal obligation to reimburse the settlors

was shown by the record here, and without such a showing, the interest would not be deductible by the taxpayer trust.

The facts as set forth clearly show that the overpayments made by the trusts had already been included as income by the trusts and when returned did not constitute taxable income. As indicated by Exhibit J, the Commissioner suggested that these overpayments might be applied to the deficiency assessed against W. H. and Margaret Easley. However, in order that such application be made, it was necessary that Easley, as trustee, consent to credit amounts which, without such consents, would be refunded to the trusts. It was impossible for the Commissioner to suggest the same procedure on the interest which had accrued, because that amount had never been reported as income by any party. Further, by Exhibit J, the Commissioner stated that any amount found to be due the trust, after the application of the credit, would be refunded to the trust, together with the allowable interest. It was necessary that the interest be returned to the taxpayer to whom it belonged, and that taxpayer must necessarily include it as taxable income for the year in which it was received.

The decision of the Tax Court must be, and is, affirmed.

POPE, Circuit Judge (dissenting).

When the Commissioner wrote the letter, Exhibit J, enclosing the "Consent to Credit" set out in the court's opinion, he must have considered that he was proposing something which the addressee, the trustee, had a lawful right to do, namely, to apply the sums refunded to the trust, upon his own obligation on the deficiency assessed against him as grantor. I cannot think the Commissioner was in this suggesting a breach of trust by Easley. He must have thought, as do I, that it was perfectly proper for Easley to make this application.[1]

And if it was appropriate thus to apply the principal of these refunds to Easley's personal tax liability, it was likewise proper for him to make a similar application of the checks for interest on these refunded amounts. This he did, as the opinion shows, by endorsing the checks and applying them, as far as they would go on his own interest obligation. It is impossible, logically or as a matter of law, to distinguish this right to apply the payments of principal, as the Commissioner suggested, from the right to apply the interest in like manner.

The right so to do stems from the fact that it is apparent that it was never Easley's intent, or the intent of anyone, to distribute to the trusts sums free from tax. The amounts paid as tax by the trusts, and later refunded, thus first came into the hands of the trusts solely as the unintended result of a mistake, and these refunded amounts were therefore owing, ex aequo et bono, to Easley, because of the trusts' unjust enrichment. Cf. Restatement, Restitution, §§ 1, 49.[2]

It follows that since the trusts were under obligation to reimburse Easley, sums upon which the interest was cal-

1. Parker v. Westover, 9 Cir., 221 F.2d 603, 606, describes an instance in which a California Superior Court, sitting in probate, appears to have approved a similar application of guardianship funds.

2. "§ 1. Unjust Enrichment. A person who has been unjustly enriched at the expense of another is required to make restitution to the other."

"§ 49. (1) A person is entitled to restitution from another to whom gratuitously and induced thereto by a mistake of law he has given land or other things or has surrendered a claim if the mistake

"(a) was caused by fraud or material misrepresentation, or

"(b) was as to the identity or relationship of the donee or was some other basic mistake, or

"(c) caused the donor to give other or more than he intended to give.

"(2) In the absence of fraud, a donor who has made a basic mistake as to the amount of a gift is entitled to restitution of the surplus only."

California cases denying relief in cases of mistake of law are inapposite, for here the transaction is a gratuitous one.

culated were in substance Easley's property, and the interest belonged to him. In receiving the interest, and applying it to the credit of him to whom it belonged, the trusts were mere conduits, and the interest was not income to them. I would reverse the tax court decision.